**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**RUSSELL H. HARDY, III**                                                                 **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO.: 4:14cv8-SA-DAS**

**DR. JAMES BURKE, ET AL.**                                                      **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Russell Hardy, proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against Dr. James Burke, Dr. John Hochberg, and Dr. Thomas Lehman ("Defendants")[1], alleging that they denied him adequate medical care while he was in the custody of the Mississippi Department of Corrections ("MDOC"). Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. Hardy has failed to timely respond to the motion. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that the defendants' motion should be granted.

**Plaintiff's Allegations & Background Facts**

At the time he initiated this action, Russell Hardy was an inmate housed at the Mississippi State Penitentiary.[2] Hardy alleges to suffer from an array of medical conditions including diabetes, diabetic neuropathy, lumbar disc disease, and hypertension, which cause him to experience debilitating muscle spasms and pain. While he concedes that Defendants placed him on various medications designed to manage these conditions and that he met with a free

---

[1] Other defendants were dismissed following a *Spears* hearing.

[2] Hardy has since been released on parole. *See* Mot. Summ. J., Ex. A; *see also* MDOC parolee search on MDOC website at https://www.ms.gov/mdoc/parolee (search by last name and first name) (last visited November 12, 2015).

world orthopedic surgeon who determined that surgery would not be beneficial to him, he nonetheless argues that his federal constitutional rights were violated as a result of the medical care he received while incarcerated. Specifically, he maintains that Dr. James Burke, Dr. J. Hochberg, and Dr. Thomas Lehman, physicians employed by MDOC's contract medical provider, have failed to prescribe suitable medication to alleviate his maladies, including his chronic pain.

## Defendants' Allegations

Defendants are all doctors who were, during the relevant time frame, employed by Wexford Health Sources, a former contract medical provider for MDOC. Defendants argue that Hardy, who suffers numerous medical conditions, was treated extensively and diligently by Defendants.

## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. The nonmovant cannot rely upon "conclusory allegations, speculation, and unsubstantiated assertions" to satisfy his burden, but rather, must set forth

specific facts showing the existence of a genuine issue as to every essential element of his claim. *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (citation omitted); *Morris*, 144 F.3d at 380. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not assume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## Constitutional Standard

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true,
would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

Negligent conduct by a prison official does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). In fact, even if physicians misdiagnose or mistreat the plaintiff's condition in what amounts to medical malpractice, a prisoner cannot sustain a § 1983 claim without a showing of deliberate indifference. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical

3

malpractice alone does not support § 1983 cause of action). In addition, a plaintiff's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *See, e.g.*, *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence "that prison officials' 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding that deliberate indifference requires the inmate to show that prison officials engaged in conduct that "clearly evince[s] a wanton disregard for any serious medical needs").

## Discussion

Russell Hardy, an individual who entered the prison system with a number of medical ailments, including diabetic neuropathy[3] and carpal tunnel syndrome, claims that he began experiencing problems obtaining adequate medical care in prison beginning in February or March of 2012. *See* Mot. Summ. J., Ex. B; Ex. C at 517-600. To refute Hardy's allegations, Defendants have produced Hardy's medical records, which span over 1400 pages. *See* Mot. Summ. J., Ex. C.

A review of Hardy's medical records demonstrates that Defendants Drs. Burke and

---

[3] Diabetic neuropathy is a type of nerve damage associated with diabetes. *See* http://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics/definition/con-20033336.

Hochberg treated Hardy at the Mississippi State Penitentiary ("MSP").[4] Hardy contends that Dr. Burke was essentially his primary treating physician at MSP, while Dr. Hochberg began working at MSP shortly before Hardy filed the instant lawsuit in January 2014. *See* Mot. Summ. J., Ex. B at 3-4; ECF No. 1. Hardy's records demonstrate that between March 23, 2012 and June 12, 2012, Dr. Burke prescribed Hardy several different medications for pain control, including Acetamin, Tegretol, and Amitriptyline. *See* Mot. Summ. J., Ex. C at 320; 316; and 310-11. Hardy's medications were adjusted in June 2012 due to an apparent reaction between his medications. *See id.* at 290-293. Also, between March 2012 and July 2012, Hardy was admitted to the prison infirmary at least three times, where he received medical care. *See, e.g., id*. at 285; 373; 207-57. Additionally, while he was incarcerated, Hardy was enrolled in three chronic care clinics: Cardiovascular, Endocrine, and Neurology. *See, e.g.*, Mot. Summ. J., Ex. C at 272-76; 814-19.

Hardy's medication was updated on July 3, 2012, after he was seen by Dr. Burke with complaints of foot pain due to his neuropathy. Id. at 269-77. At that time, it appears as though Dr. Burke discontinued two medications and authorized prescriptions for Hardy to receive seven additional medications to alleviate his chronic conditions. *Id*. at 270-71; 275. Dr. Burke started Hardy on a ninety-day trial of Neurotin on July 10, 2012, in an attempt to treat his complaints of back pain. *Id*. at 265-67.

Hardy's medications appear to have been updated again on July 30, 2012. *Id*. at 201-03. Following Hardy's sick call request on August 22, 2012, where he complained that his

---

[4] The Court does not attempt to recite all of the medical treatment Hardy received while in MDOC custody, but rather, does so to the extent necessary to address the issue of Defendants' liability.

symptoms were not improving, Dr. Burke ordered that Hardy receive another ninety-day trial of Neurotin at a higher dose. *Id*. at 171; 173-74. Hardy received X-rays in August after he complained of neck and back pain. *Id*. at 175-76; 186. On August 10, 2012, Dr. Burke ordered that Hardy receive a Toradol injection for pain after Hardy reported falling and injuring himself in the shower. *Id*. at 183. Dr. Burke also ordered that Hardy receive the medications Indomethacin and Baclofen to treat his pain and spasms. *Id*. at 184-86.

In October 2012, Hardy was transferred to the Central Mississippi Correctional Facility ("CMCF"). *See, e.g.*, Mot. Summ. J., Ex. C at 160-61. He was enrolled in the Chronic Care Clinics at that facility, and his trial of Neurotin was continued. *Id*. at 158; 133. While at CMCF, Hardy was treated by Thomas Lehman, the corporate medical director for Wexford Health Sources, on one occasion. *See* Mot. Summ. J., Ex. B at 4; Mot. Summ. J. Ex. E, Aff. of Thomas Lehman. According to Dr. Lehman's affidavit and Hardy's medical records, Hardy was seen by Dr. Lehman on November 15, 2012. *Id.*, Ex. E; Ex. C at 135. These records indicate that Hardy submitted a sick call request complaining of ringing in his ears, but that the ringing had stopped by the time he was examined by Dr. Lehman. *Id.* at 135-36. According to Hardy's medical records, he voiced no complaints at the time of his examination by Dr. Lehman. *Id.* at 136.

By December 2012, Hardy was once again housed at MSP and was seen by medical staff on December 12, 2012, with multiple complaints, including irritable bowel syndrome. *Id*. at 116. Hardy was prescribed medication to treat his symptoms. *Id*. On December 18, 2012, Hardy was seen by medical with complaints of ringing in his ears and was prescribed medication by Dr. Burke. *Id.* at 109. On December 20, 2012, Dr. Burke requested a specialty consult to alleviate nerve problems in Hardy's left elbow and wrist. *Id*. at 106. This request was signed by

6

Dr. Lehman, the corporate medical director for Wexford, on December 21, 2012. *Id*. at 107; *see also* Mot. Summ. J., Ex. E. On January 25, 2013, Hardy was transferred offsite to visit an orthopedist, Dr. Fisher, who did not recommend surgery for Hardy's condition. *See id.*, Ex. C at 107; 434-45.

On January 15, 2013, Hardy complained of excessive diarrhea, and medical personnel added Kaopectate to his list of medications. *Id*. at 92. After he complained in late January 2013 that his medicine regime was not effective in resolving his pain, his Neurotin dosage was increased and he was given a Toradol injection. *Id.* at 81-83.

Hardy was admitted to the MSP infirmary on February 6, 2013, with complaints of throwing up blood and a suspected gastrointestinal hemorrhage. *Id*. at 1-71; 1236-1308; 1318-1431. He was not discharged until March 7, 2013. *Id.* at 1236-37. While he was in the infirmary, Hardy had a consult with an outside gastrointestinal specialist. *Id*. at 1216-1228.

On June 21, 2013, Hardy was seen by medical personnel with a request that certain medications, including Neurotin, be discontinued as ineffective, and he was prescribed the medications Flexeril and Ultram in substitution. *Id*. at 1113-1117. Hardy was prescribed Antivert on June 19, 2013. *Id*. at 1118. After Hardy complained of chronic pain on July 23, 2013, the medication Baclofen was prescribed to him. *Id*. at 1075-76. Hardy received a prescription of Naproxen from a different physician on the following day, July 24, 2013. *Id.* at 1071. It was noted at his weekly assessment on July 29, 2013, that Hardy was taking ten different medicines for various stomach, pain, and blood pressure issues. *Id*. at 1066.

On August 5, 2013, prison physician Dr. Lorenzo Cabe requested that Hardy be placed on Lyrica as a treatment for his neuropathy, but at the suggestion of a Doctor of Pharmacy, he

7

was placed on a trial of Venlaxafine instead. *Id*. at 1052-1053. As a result of Hardy's complaints of nausea during his weekly assessment on August 16, 2013, Dr. Cabe ordered Hardy to receive a dose of both Clonidine and Phenegran. *Id*. at 1035. In late August 2013, after complaining of arm and shoulder pain, Hardy was prescribed a wrist brace and a medication for nausea. *Id.* at 996. Also in August, Hardy began to refuse certain medications. *See, e.g., id.* at 972-75; 978-79; 983; 987; 989-91; 998; 1001; 1005-07; 1008-10; 1018-20; 1028-29; 1031-32; 1036.

Dr. John Hochberg saw Hardy on October 1, 2013, for Hardy's complaints that he was suffering chronic knee and back pain. *Id*. at 951. Dr. Hochberg initially ordered Hardy to receive the prescription Lyrica, but at the suggestion of the pharmacy the prescription was changed to Capsaicin. *Id*. at 919; 947.

Over the next several months, Hardy was given additional treatment for headaches, diabetes, blood pressure issues, and deficiencies in his eyesight. *Id.* at 821-908. On April 1, 2014, Hardy was seen for complaints of neck pain and numbness in his right shoulder, and Dr. Hochberg ordered Hardy to receive a Ketoralac (Toradol) injection. *Id.* At a followup visit on April 25, 2014, Dr. Hochberg changed Hardy's medications again. *Id.* at 757-59. On July 24, 2014, Hardy was given a discharge health plan summary and was therafter released on parole. *Id*. at 717-19; *see also* Mot. Summ. J., Ex. A.

During his incarceration, Hardy was treated by various MDOC medical providers for a host of medical problems, including gastritis, diabetes, diabetic neuropathy, lumbar disc disease, hypertension, anxiety disorder, and depressive disorder. *See* Mot. Summ. J., Exs. C and D, Aff. of James Burke. According to prison physician Dr. James Burke, Hardy was prescribed at least nine different medications to alleviate discomfort during his incarceration, and he maintains that

all of the medications were "appropriate medications for pain and neuropathy." Mot. Summ. J., Ex. D, p. 1 ¶ 5.[5]

Hardy is an individual with many chronic, undoubtedly painful, medical conditions that appear difficult to fully treat. However, the reams of medical records in this action demonstrate that Defendants treated Hardy extensively, attempted to alleviate his symptoms by testing him with different medications, and referred Hardy to outside specialists in an effort to resolve his conditions. These records demonstrate that Hardy was not denied medical treatment, even on occasions when he was noncompliant with his medical treatment. Therefore, the Court finds that Hardy has failed to show that any named Defendant acted with deliberate indifference to his need for medical care, and his complaints against them are frivolous. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming dismissal of inmate's deliberate indifference claims as frivolous where medical records rebutted defendant's allegations of deliberate indifference).

## Conclusion

For the reasons set forth herein, Defendants' motion for summary judgment [77] is **GRANTED**, and Hardy's claims against Defendants are **DISMISSED WITH PREJUDICE** as frivolous. A separate final judgment in accordance with this Memorandum Opinion and Order will enter today.

**SO ORDERED** this the 11th day of December, 2015.

 /s/ Sharion Aycock
 **U.S. DISTRICT JUDGE**

---

[5] These medications included: Neurotin, Dilantin, Tegretol, Indomethacin, Baclofen, Amitriptyline, Flexeril, Capsaicin, and Venlaxifine (Effexor). *Id.* Dr. Burke states that Hardy was also prescribed medications to treat hypertension and gastrointestinal problems. *Id.* at ¶ 7.